Lota Davidson MERRIMAN, Plaintiff-Appellant,

v.

Mittie Jo Merriman JONES, Glenda Merriman Alexander, Tom H. Merriman, Jr., Richard Wayne Merriman and Floyd Merriman, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

June 5, 1981.

Appeal Denied by Supreme Court Aug. 24, 1981.

W. C. Keaton, Keaton, Turner & Peluso, Hohenwald, James A. Hopper, Savannah, for plaintiff-appellant.

Geo. G. Gray, Charles Jeffrey Barnett, Waynesboro, for defendants-appellees.

## OPINION

CANTRELL, Judge.

In this case we are concerned with the effect of T.C.A. § 31–604 on the time within which a surviving spouse may dissent from the will under T.C.A. § 31–601.

A surviving spouse's right to dissent from a will is preserved in T.C.A. § 31–601:

The surviving spouse shall have a right of election to take an elective share of one-third (⅓ of decedent's net estate as defined by § 31–602(b). Such elective share, when so determined, shall be exempt from the debts and charges of the decedent incurred after April 1, 1977.

T.C.A. § 31–604 provides:

To enable the surviving spouse to act as personal interest may require, the personal representative shall disclose, upon application, the state and condition of the spouse-testator's estate.

Thomas Harris Merriman died testate October 20th, 1978, leaving a widow and four adult children by a previous marriage. The day after the funeral three of the children and the widow met in the office of an attorney hired to represent the children with respect to the estate. The attorney produced and read a will and codicil thereto which, in general terms left the widow the property of the deceased after satisfaction of certain specific devises and bequests. As it turns out the widow would have taken very little under the will because most of the deceased's property was disposed of in the specific portions of the will. The widow was advised of her right to dissent.

The will and the codicil were not probated until March 28, 1979 because the attorney had difficulty getting the necessary information from the children, all of whom were non-residents.

On June 27, 1979 the widow employed counsel. Although she was generally familiar with the affairs of her deceased husband, there were certain facts about his estate that had not been disclosed to her. An incomplete inventory showing a personal estate of $3,285.00 had been furnished to her lawyer. On July 27, 1979 her lawyer wrote to the lawyer representing the executors and requested a disclosure of the full extent of the estate. The letter contained the following paragraphs:

Obviously under the will of Mr. Merriman, my client, Mrs. Lota Merriman would take little if anything. In other words, unless we can work out some agreement satisfactory to all, it will be necessary that Mrs. Merriman proceed to seek her elective share under the provisions of T.C.A. 31–601, et seq.

I would first like to address myself to the inventory, copy of which you forwarded me a few days ago. It is apparent from the examination of this inventory that there is a considerable amount of property that is not listed which she believes to be a part of his estate. I would like for you to regard this letter as a request by the widow for a disclosure by the administrator of the extent of the estate as is provided by T.C.A. 31–604.

Mrs. Merriman advises me that she has never seen an inventory of the lock box in the Bank of Waynesboro. She says that shortly before her husband's death, Richard and Tommy came by the house and got Mr. Merriman's key to the lock box and went to the bank. When she inquired as to the contents of the lock box they either failed or refused to disclose any information relative to same. I note in connection with the notice mailed to the Commissioner of Revenue that the estate was valued at $85,000.00 and usually this is on the conservative side. I would assume that a portion at least of this property would be the real estate which was purchased from Gallaher et ux. The $85,000.00 figure at least indi-

cates to us that the inventory is not complete.

I wonder if any inquiry has been made of Liberty Life Insurance Company relative to insurance Policy No. 42446 which at one time was carried on the life of the deceased which may have been cashed out or terminated many years ago. It might be worth a letter to say the least to inquire as to the status of same.

I note in the probated will a reference to a note owed by Sam Stooksberry in the sum of $12,000.00. Of course this note is not listed as an asset. I am wondering if this note was paid off or just what the status of the same is, as

I would also like to make an inquiry as to any debt owed the deceased by his children, as we know that on a number of occasions, his children did take loans from their father, at least one of which was made on July 14th, 1976 in the sum of $5,000.00. It would appear from certain of our information that at least one time the children owed at least $14,000.00 to their father.

Another item that is not mentioned in the inventory in which I assume would not properly be listed would be any rental on the farmland which was received after his death or any receipts for rentals due prior to the death of the deceased.

Another item about which specific inquiry is made are any funds which were deposited by the deceased in his name and the names of the children. We would insist that such funds were the property of the deceased and subject to the rights of his widow. These joint savings accounts at one time were in the Bank of Waynesboro, Wayne County Bank, and First Federal Savings Bank of Waynesboro. At one time, the savings amounted to at least $18,000.00.

. . . .

Frankly, I think the first thing we need to ascertain is the extent of the estate and we would certainly need to have an accounting as to the debts, joint bank accounts, etc., before we can discuss anything else because the inventory that you

forwarded to me, according to my information, is very incomplete.

We will be glad to hear from you at your earliest conveniences. We would like to move this matter to an early conclusion, if possible.

The disclosure sought in the letter was not made. The statutory time for dissent from the will passed on September 28, 1979. On October 9, 1979, the widow's lawyer received another inventory showing a personal estate of $10,185.00 along with a letter from the lawyer representing the executors as follows:

Please find enclosed copy of the Inventory we shall file in the above styled estate. The items listed are the only ones in which we intend to make a part of the Inventory. We do not feel that the bank accounts would be proper to include in the inventory in that those bank accounts were jointly owned by the deceased and the children with the right of survivorship and therefore are automatically owned by these children upon deceased death.

You may take whatever action you deem necessary and should you have any specific proposals based on this inventory to settle any claims that Mrs. Merriman may have, please advise.

When further negotiations proved unfruitful the present action was filed in the Chancery Court of Wayne County on November 1, 1979. The inventory of the estate was filed on January 18, 1980; the contents of the lock box were not fully disclosed until the date of the trial below, July 11, 1980.

After a hearing, the Trial Court entered a decree denying the widow the right to dissent. The decree included the following findings and conclusions:

1. Plaintiff failed to dissent from her deceased husband's will by filing for her elective share within the time permitted by Tennessee Code Annotated, Section 31–603.

2. Plaintiff's failure to file for her elective share within the time permitted by T.C.A. 31–603, was not excused by the

failure of the personal representative to fully disclose the state and condition of the testator's estate because the court finds that:

a. The knowledge of the plaintiff was sufficient for her to protect her rights by filing within the time limit.

Plaintiff was adequately aware of the state and condition of the estate and was not sufficiently prejudiced by the failure of the personal representative to make a full disclosure.

b. There was no actual fraud on the part of the personal representatives or their attorneys in failing to disclose or in continuing to negotiate with the plaintiff concerning her claims against the estate.

c. The items omitted from the disclosure, what disclosure there was, were not of sufficient significance to allow the plaintiff the right that she would have been entitled to had she dissented within the statutory time.

3. T.C.A. 31–603 setting the time for dissent, and T.C.A. 31–604 setting the requirements on the personal representative to disclose, are tied together and both are mandatory. Plaintiff was entitled to disclosure.

4. The Court further finds that the conduct of Richard and Tom Merriman in the removal of the notes from the lock box, even though it appears that they were back in at the time the inventory was taken, does not fit within their stated intent to try to make sure some cash was available and not tied up in the lock box in the event of their father's death. Taking out of one or two of the certificates of deposit makes some sense, but the taking out of the notes that are clearly part of the estate which they clearly would not have thought were extinguished by the death is suspect, nevertheless, the Court does not think that is enough to grant plaintiff the rights she would have had, had she dissented in time.

5. By reason of the foregoing findings, plaintiff is denied the right now to dissent and be granted her elective share.

We are unable to agree with the conclusion of the Trial Judge and therefore reverse. We hold that the provision of T.C.A. § 31–604 is mandatory and must be strictly complied with by the representative of an estate or the statutory time for filing a dissent will not bar the widow from making that election. While we could agree with the Trial Judge that the widow in this case knew *nearly* all there was to know about the estate of her deceased husband, there was enough uncertainty about his affairs to keep her in the dark as to whether she should dissent from the will. Those are the features which her attorney sought in the letter of July, 1979—the contents of the lock box, the debts owed to the deceased by his children, the amounts deposited to the joint account of the deceased and his children—and that information was never supplied within the time in which she had to dissent. The Trial Judge held that this lack of information was not sufficiently prejudicial to her to prevent her from dissenting. We think that conclusion is giving the representatives of the estate the benefit of hindsight and will encourage the withholding of vital information from a surviving spouse on the belief that the spouse will not be able to prove that he or she was sufficiently prejudiced by the withheld information. We think the better rule would be to require strict adherence to the statute in order that its beneficial effect may be secured to surviving spouses.

This is a question that apparently has not come up directly in this State before. There is language on point in the case of *Ferris v. Fort*, 2 Cooper's Tenn. Ch. 147 (1874), but a reading of the facts in that case reveals that the language is *dicta*. Chancellor Cooper, in that case, citing *Smart v. Waterhouse*, 18 Tenn. 94 (1836), said:

There can be no doubt that a widow may assert her rights as though she had dissented in time if she has been prevented from dissenting within the limited time by fraud.

The Chancellor would adhere to the same rule "if the condition of her husband's es-

tate is not disclosed to her by the personal representative." *Smart v. Waterhouse* stands for the proposition that if a dissent is prevented by fraud, the widow may assert her rights as though she had dissented in time. While not exactly in point, these cases are authority, we think, for the rule that we have heretofore announced. Therefore the Trial Judge's decision with respect to the right of the widow to dissent under the circumstances of this case is reversed.

There are collateral issues raised in this appeal which were decided by the Court below. Specifically, the Court held that the widow was not entitled to any of the personal property of the deceased under the provisions of Chapter 2 of Title 26 of the Tennessee Code, nor under Sections 30–801 or 30–803 because the widow did not dissent within the time allowed. The ruling with respect to the exempt property should be reexamined by the Trial Judge now that we have held that the widow has the right to dissent.

Therefore the cause is remanded to the Trial Court for further proceedings in light of the ruling in this case. The costs on appeal will be taxed to the appellees.

REVERSED AND REMANDED.

LEWIS and CONNER, JJ., concur.